UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> C.W., Inc. d/b/a CPG STAFFING, <br><br> and <br><br> EXECUTIVE PERSONNEL GROUP, LLC, <br><br> Defendants. | CIVIL ACTION NO.  2:24-CV-138 <br><br> JURY TRIAL DEMAND |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Darantay Green ("Green"), who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendants C.W., Inc. d/b/a CPG Staffing and Executive Personnel Group, LLC (collectively, "Defendants") subjected Green to discrimination when they regarded him as disabled and rescinded his job offer because of a perceived disability.

**JURISDICTION AND VENUE**

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     Jurisdiction of this Court is proper, as Green would have worked in Hazlehurst, Georgia, Jeff Davis County, but for the Defendants' unlawful employment practices. *See* 42 U.S.C. § 2000e-5(f)(3), incorporated into the ADA by 42 U.S.C. § 12117(a).

**PARTIES**

3.     Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     Defendant C.W., Inc. d/b/a CPG Staffing (hereafter "CPG Staffing") maintains its principal place of business at 1989 West 15th Street Suite 101, Washington, North Carolina 27889.

2

5.      Defendant Executive Personnel Group, LLC ("Executive Personnel") maintains its principal place of business at 1989 West 15th Street Suite 101, Washington, NC 27889.

6.      CPG Staffing uses Executive Personnel for administrative services, such as payroll and personnel assistance.

7.      Executive Personnel and CPG Staffing jointly make personnel decisions for CPG Staffing employees.

8.      Executive Personnel and CPG Staffing share common managers.

9.      An employee of Executive Personnel facilitated and participated in rescinding Green's job offer.

10.     Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated employer for purposes of the ADA.

11.     Alternatively, Defendants each exercised sufficient control over the terms and conditions of Green's employment as to constitute Green's joint employers for purposes of the ADA.

12.     At all relevant times, Defendants have continuously been doing business in the State of Georgia.

13.     At all relevant times, Defendants have continuously had at least 15 employees.

3

14.     At all relevant times, Defendants have been employers engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

15.     At all relevant times, Defendants have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

16.     More than thirty days prior to the institution of this lawsuit, Green filed a charge with the Commission alleging violations of the ADA by Defendants.

17.     On or about April 23, 2024, the Commission issued to Defendants CPG Staffing and Executive Personnel a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants CPG Staffing and Executive Personnel to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

18.     On or about May 31, 2024, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

19.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

20.    CPG Staffing is a staffing agency and provides temporary workers for businesses in the construction industry.

21.    In or around January 2021, CPG Staffing began hiring welders for a construction project in Hazlehurst, Georgia at a site operated by one of its clients, Quality Industries of America ("QIA").

22.    The job announcement for the QIA Hazlehurst, Georgia project stated, "CPG Staffing is hiring local stick welders … at the sawmill in Hazlehurst, GA … There is an opportunity to be hired on permanent if interested."

23.    CPG Staffing and QIA have an agreement that CPG Staffing will employ and pay contracted employees for 600 hours or approximately 120 days.

24.    According to the agreement between CPG Staffing and QIA, if a CPG Staffing employee works on a project with QIA for more than 600 hours, that employee will transition to QIA's payroll.

25.    In or about January 2021, Green spoke with CPG Staffing's Manager regarding the QIA Hazlehurst project, who explained to Green that the job would be a 9-to-12-month project with the potential for permanent employment with QIA.

26.    On or about January 29, 2021, Green applied for a position with Defendants to work as a Welder for QIA's Hazlehurst, Georgia project.

27.     On or about January 29, 2021, Defendants hired Green as a Welder for the QIA Hazlehurst, Georgia project.

28.     Immediately after he was hired, Green completed and passed a physically demanding welding test.

29.     The welding test consisted of, but was not limited to, crawling on an iBeam and climbing a ladder.

30.     After being hired by Defendants, on or about January 29, 2021, Green completed a post-offer medical questionnaire and truthfully indicated that in 2019 he had been treated for a knee injury and brought a worker's compensation claim against a previous employer.

31.     In the questionnaire, Green indicated that he was capable of performing the essential duties of the Welder position.

32.     In the questionnaire, Green indicated that he did not require a reasonable accommodation.

33.     Green did not state nor indicate in the questionnaire that he had an active or permanent disability.

34.     On or about January 30, 2021, Defendants sent Green an email stating that Defendants' risk manager required more information about Green's knee injury and asked whether Green had been released by a physician to return to full duty.

35.     Green obtained a letter from his physician on or about February 2, 2021, which listed Green's work status as "regular duty," and Green sent the physician's work release form to Defendants.

36.     CPG Staffing's Manager conferred with Executive Personnel's Operations Manager regarding Green's post-offer medical questionnaire.

37.     Executive Personnel's Operations Manager had decision making authority to determine whether CPG Staffing would hire Green.

38.     Since on or about 2018, Executive Personnel's Operations Manager has assisted CPG Staffing with its administrative processes, such as payroll processing and workers compensation risk management.

39.     Executive Personnel employees assist with CPG Staffing's payroll operations.

40.     Executive Personnel's Operations Manager stated that Green would not be able to perform the duties of the Welder position due to "the high intensity work of the job[.]"

41.     Executive Personnel's Operations Manager never spoke with Green.

42.     After Executive Personnel's Operations Manager determined it was "too risky" to hire Green, CPG Staffing's Manager sent Green an email stating, "our risk manager just informed me that they still aren't willing/able to place you on the assignment due to that workers comp claim."

43.     Defendants rescinded the job offer issued to Green.

44.     Green called CPG Staffing's Office Manager for a further explanation, and CPG Staffing's Office Manager stated that the decision was made by someone above him.

45.     Defendants hired at least six welders to work on the Hazlehurst, Georgia project.

## STATEMENT OF CLAIMS

### *"Regarded As" Disability Discrimination*

46.     The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 as if fully asserted herein.

47.     Since at least January 29, 2021, Defendants have engaged in unlawful employment practices in violation of the ADA.

48.     Defendants regarded Green as having a disability.

49.     Defendants subjected Green to an adverse employment action by rescinding his offer of employment.

50.     Defendants rescinded Green's job offer because they perceived him as having an impairment.

51.     Defendants failed to hire Green because of his perceived disability.

52.     Green could have performed the duties of the welder position without a reasonable accommodation.

53.     The unlawful employment practices complained of above have deprived Green of equal employment opportunities.

54.     The unlawful employment practices complained of above were intentional.

55.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Green.

### *Integrated Enterprise*

56.      Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated employer for purposes of the ADA.

57.     Executive Personnel and CPG Staffing share the same principal office at 1989 West 15th Street, Suite 101, Washington, NC 27889.

58.     Executive Personnel's Operations Manager managed operations at Executive Personnel and acted as a risk manager for CPG Staffing.

59.     Executive Personnel and CPG Staffing share common management, to include Sandra Warren.

60.     Sandra Warren is Executive Personnel's Managing Member.

61.     Sandra Warren is CPG Staffing's Incorporator/Organizer.

62.     Executive Personnel and CPG Staffing share centralized control of labor relations.

63.     Executive Personnel's Operations Manager made the final decision regarding employment matters related to Green's employment with CPG Staffing.

64.     When CPG Staffing's Office Manager stated that the decision to rescind Green's job offer was made by someone above him, he was referring to Executive Personnel's Operations Manager.

65.     Executive Personnel's Operations Manager also made other personnel decisions for CPG Staffing, such as processing workers compensation claims and reviewing post-offer medical questionnaires for CPG Staffing to determine whether an applicant or employee would be fit for a CPG Staffing position.

66.     CPG Staffing's Manager referred to Executive Personnel's Operations Manager as "our risk manager" when he informed Green that CPG Staffing was not willing to place Green on the assignment due to his workers compensation claim.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in employment practices that discriminate against employees with disabilities or who are regarded as having disabilities.

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals

with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C.      Order Defendants to make Green whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

D.      Order Defendants to make Green whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.      Order Defendants to make Green whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.      Order Defendants to pay Green punitive damages for their malicious and reckless conduct, as described above, in an amount to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## <u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,


KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN FLEGAL
Supervisory Trial Attorney

*/s/ Iriel Jones*
Iriel Jones
Trial Attorney
Georgia Bar No. 266716
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Atlanta, Georgia 30303
iriel.jones@eeoc.gov
Telephone: 470-531-4808
Facsimile: 404-562-6905